**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**BROADCAST MUSIC, INC. et al.,**

              **Plaintiffs,**　　　　　　1:10-cv-1393
　　　　　　　　　　　　　　　　　　　　　　　　(GLS/DRH)

              v.

**DFK ENTERTAINMENT, LLC,** d/b/a
Sneaky Pete's a/k/a Club Sneaky Pete's,
and **DOMINIC F. KARL,**

              **Defendants.**
_____

**APPEARANCES:**　　　　　　**OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Hodgson, Russ Law Firm　　　PAUL I. PERLMAN, ESQ.
The Guaranty Building　　　　RICHARD L. WEISZ, ESQ.
140 Pearl Street
Suite 100
Buffalo, NY 14202-4040

**FOR THE DEFENDANTS:**
Tabner, Ryan Law Firm　　　　WILLIAM J. KENIRY, ESQ.
18 Corporate Woods Blvd.　　　DANA L. SALAZAR, ESQ.
Albany, NY 12211-2605

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs Broadcast Music, Inc., Warner-Tamerlane Publishing Corp.,

Amazement Music, Hip City Music Inc., Hifrost Publishing, Wide Grooves Music, Gliro Music Inc. and Songs of Universal, Inc. (collectively "BMI") commenced this action under the Copyright Act of 1976,[1] alleging defendants DFK Entertainment, LLC and Dominic Karl (collectively "DFK") committed five acts of willful copyright infringement. (*See* Compl. ¶¶ 17-24, Dkt. No. 1.) Pending is BMI's motion for summary judgment and DFK's cross-motion for partial summary judgment. (*See* Dkt. Nos. 24, 25.) For the reasons that follow, BMI's motion is granted and DFK's cross-motion is denied.

## II. Background[2]

Under its agreements with various music publishing companies and composers, BMI licences "the right to publicly perform copyrighted musical compositions on behalf of the copyright owners of those works." (*See* BMI's Statement of Material Facts (SMF) ¶¶ 1-2, Dkt. No. 24, Attach. 8.) In turn, BMI sells "blanket licence agreements," which entitle music users, such as DFK, to "publicly perform any of the works in BMI's repertoire."

---

[1] *See* Pub. L. No. 94-553, 90 Stat. 2541 (codified as amended in scattered sections of 17 U.S.C.).

[2] The facts are undisputed unless otherwise noted.

(*See id.* ¶ 4.)  Albeit "non-exclusive," BMI acquired public performance rights to "Ain't No Stoppin' Us Now," "Before I Let Go," "Poison," "Rebirth of Slick Cool Like Dat" and "Mona Lisa" (collectively "the Works"),[3] each of which was performed without BMI's authorization at DFK's nightclub, Sneaky Pete's.  (*See id.* ¶¶ 3, 6, 18-22.)

Located on Central Avenue in Albany, New York,[4] Sneaky Pete's held upwards of 600 people, and charged between $10 and $40 for admission.  (*See* Dkt. 24, Attach. 7 at 12-14; DFK's SMF ¶ 24, Dkt. No. 25, Attach. 3.)  From September 19, 2007 to February 6, 2011, Sneaky Pete's was owned and operated by DFK Entertainment LLC, through its sole member and owner, Dominic Karl.  (*See* BMI's SMF ¶¶ 6-8.)  Although he was only present 70% of the time it was open, Karl was the club's general manager, and as such, was authorized to "control the activities at Sneaky Pete's."  (*See id.* ¶¶ 9, 12, 14.)  For example, after Karl was served in this case, he "posted a notice that all disc jockeys should refrain from playing songs that are licensed only through BMI."  (DFK's SMF ¶ 59.)

---

[3]  All of the Works have been registered with the Copyright Office, and a registration certificate was issued for each to BMI, or its predecessor in interest.  (*See* BMI's SMF ¶ 23.)

[4]  According to DFK, it only received mail at its mailing address at 299 Lake Road in Ballston Lake, New York.  (*See* DFK's SMF ¶ 24, Dkt. No. 25, Attach. 3.)

With respect to the infringements at issue, DFK concedes[5] that the Works were publicly performed at Sneaky Pete's without BMI's authorization on either March 28-29, 2009 or July 24-25, 2010.  (*See id.* ¶¶ 18-22.)  While DFK believed its ASCAP license, standing alone, was sufficient,[6] (*see id.* ¶¶ 47, 50), BMI, prior to commencing the investigation, placed seventy-nine telephone calls and sent sixteen letters to Sneaky Pete's regarding the public performance of its music.  (*See id.* ¶¶ 25-26, 47-50.)  Though six letters were sent directly to Sneaky Pete's—as opposed to DFK's preferred mailing address—Karl admits that he spoke with a BMI representative "[o]n at least one occasion."  (*Id.* ¶ 26.)  In total, BMI claims it was deprived of $25,674 in licensing fees for the period beginning December 2007 and ending February 2011.  (*See id.* ¶ 28.)

### III. Standard of Review

The standard of review under Fed. R. Civ. P. 56 is well established

---

[5] DFK's response to BMI's SMF contains several responses which state "Defendants do not deny this assertion."  (Dkt. No. 25, Attach. 3 ¶¶ 1-4, 21-26.)  Although the distinction between this statement and a simple admission is unclear, the court deems these paragraphs admitted.  *See* N.D.N.Y. L.R. 7.1(a)(3).

[6] ASCAP, like BMI, is a "performing rights society" under 17 U.S.C. § 101.  (*See* Dkt. No. 26, Attach. 2 ¶ 33.)  Notwithstanding the fact that DFK did not produce a copy of its ASCAP license—which only covers March 1, 2009 to February 29, 2010—until after discovery was closed, DFK has yet to show which of the Works ASCAP authorized it to play.  (*See id.*; *see also* Dkt. No. 25, Attach. 5.)

and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, No. 1:09-cv-652, 2011 WL 5599571, at *4 (N.D.N.Y. Nov. 17, 2011).

## IV. Discussion

BMI argues it is entitled to summary judgment because it has provided uncontroverted evidence which proves DFK infringed the copyrights in question. (*See* Dkt. No. 24, Attach. 9 at 6-8.) While not admitting that BMI proved its case, DFK's "primary defense . . . is the unreasonableness of [BMI's] damages demands." (Dkt. No. 25, Attach. 1 at 4.) Thus, before addressing the issue of damages, the court discusses the sufficiency of BMI's proof with respect to its infringement claim.

### A. *Prima Facie* Case of Infringement

"Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997); *see* 17 U.S.C. § 501(a). In the context of musical works, "copying" means the right "to perform the copyrighted work publicly." 17 U.S.C. § 106(4). Thus, establishing a prima facie case of copyright infringement in musical works hinges on proof of the following:

(1) the originality and authorship of the compositions involved; (2)

5

> compliance with all formalities required to secure a copyright under Title 17, United States Code; (3) that plaintiffs are the proprietors of the copyrights of the compositions involved in this action; (4) that the compositions were performed publicly for profit (by the defendants); and (5) that the defendants had not received permission from any of the plaintiffs or their representatives for such performance.

*Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 912 (D. Conn. 1980) (internal quotation marks and citations omitted); *see also* 17 U.S.C. § 410(c) (stating that in a judicial proceeding, a copyright registration "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").

Here, BMI submitted affidavits, certified infringement reports, and copyright registrations for the Works that prove all of the elements of its infringement claim. (*See generally* Dkt. No. 24, Attachs. 1-5.) Because DFK neither challenged BMI's evidence nor refuted its averments,[7] the

---

[7] DFK's belief regarding its ASCAP license is immaterial. (*See* Dkt. No. 25, Attach. 1 at 5.) First, the documentation provided shows an ASCAP license for the period of March 1, 2009 to February 28, 2010; there is no proof of an ASCAP licence for 2008, or in July 2010 when two of the Works were performed at Sneaky Pete's. (*See* Dkt. No. 25, Attach. 5.) Second, DFK did not produce the license until after discovery closed. (*See* Dkt. No. 26, Attach. 3 at 8.) And finally, even if the license was admissible, DFK failed to plead a licence defense in either of its Answers, and thus, the defense is waived. (*See generally* Dkt. No. 17, 18); *See* Fed. R. Civ. P. 8(c); *see also Tasini v. New York Times Co., Inc.*, 206 F.3d 161, 170-71 (2d Cir. 2000) ("[W]here an author brings an infringement action against a purported licensee, the license may be raised as a defense . . . .") (internal citation omitted)); *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994) ("The general rule in federal courts is that a failure to plead an affirmative defense results in a waiver.").

6

court concludes that there are no genuine issues of material fact and BMI is entitled to summary judgment on its copyright infringement claim.

## B.     Damages

Turning to the question of damages, BMI argues that both DFK Entertainment, LLC and Karl are liable for the infringement, and as such, should be ordered to pay statutory damages, as well as reasonable attorneys' fees.  (*See* Dkt. No. 24, Attach. 9 at 13-18.)  DFK counters that its infringement was "innocent," and thus, only a minimal award of damages is appropriate.  (*See* Dkt. No. 25, Attach. 1 at 4-5.)  It further claims that regardless of the damages awarded, Karl is not individually liable for the infringement.  (*See id.* at 6-8.)  The court addresses each of these arguments in turn.

### 1.     *Vicarious Liability*

DFK asserts the Karl is not individually liable because he has neither "'the right and ability to supervise the infringing activity,'" nor "'a direct financial interest in such activities.'"  (Dkt. No. 25, Attach. 1 at 6.) The court disagrees.

Where, as here, direct liability for copyright infringement is inapplicable, the defendant may still be responsible as either a vicarious or

7

contributory infringer. *See Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.3d 552, 554 (2d Cir. 1972) ("Copyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable."). Though not explicitly provided for in 17 U.S.C. § 501(a), an individual, "who, with knowledge of the infringing activity, *induces, causes or materially contributes to the infringing conduct of another*, may be held liable as a 'contributory' infringer." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (internal quotation marks and citations omitted). Stated another way, a person who knows or has "reason to know of the direct infringement," and "engages in 'personal conduct that encourages or assists the infringement,'" will be liable for contributory infringement. *Id.* at 118 (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019-20 (9th Cir. 2001) (internal quotation marks omitted)); *see, e.g.*, *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) (stating that in copyright law, "[w]illful blindness is knowledge"). Vicarious infringement, on the other hand, does not require proof of knowledge. *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). Rather, an individual is jointly and severally liable as a vicarious infringer "if he has the right and ability to supervise the

infringing activity and also has a direct financial interest in such activities." *Id.*

In the instant case, it is undisputed that DFK Entertainment, LLC is liable as a contributory infringer since it not only owned and operated Sneaky Pete's, but it also profited from, and had the right to control, the club's activities. (*See* Dkt. No. 24, Attach. 9 at 10; BMI's SMF ¶¶ 6, 14.) While Karl may also be liable for contributory infringement, the parties arguments' regarding Karl's individual liability focus solely on theory of vicarious infringement. (S*ee* Dkt. No. 24, Attach. 9 at 10-13; Dkt. No. 25, Attach. 1 at 6-8.)

Irrespective of the theory applied, DFK's stance on Karl's individual liability is untenable. Besides being the sole member and owner of DFK Entertainment, LLC, which in turn owned and operated Sneaky Pete's, DFK admitted that Karl was the general manager of Sneaky Pete's and present 70% of the time it was open. (*See* Dkt. No. 25, Attach. 3 ¶¶ 5-10, 12.) Thus, even if Karl allowed others to "make day-to-day management decisions," (Dkt. No. 25, Attach. 4 ¶ 11), he, by virtue of his positions with DFK Entertainment, LLC and Sneaky Pete's, had the "right and ability to supervise the infringing activity." *Gershwin Pub. Corp.*, 443 F.2d at 1162.

9

Furthermore, Karl testified that he drew roughly $35,000 per year in paychecks from Sneaky Pete's, and answered "No" when asked if he received "any amounts from the operation of Sneaky Pete's other than [those] draws." (*See* Dkt. No. 24, Attach. 7 at 17-18.) Indeed, Karl (*Id.* at 18.) These statements establish that Karl had the requisite financial interest in Sneaky Pete's. *See Gershwin Pub. Corp.*, 443 F.2d at 1162.

Because Karl had the "right and ability to supervise the infringing activity and also ha[d] a direct financial interest in such activities," his knowledge thereof is irrelevant. *Id.* It follows that DFK Entertainment, LLC and Karl are jointly and severally liable for the infringement of the Works.

*2.    Statutory Damages*

To remedy the infringement of the Works, BMI seeks $45,000 in statutory damages. (Dkt. No. 24, Attach. 9 at 13-17.) DFK contends that BMI's request is excessive, and should be reduced to $200 per infringement since it was an "innocent infringer." (Dkt. No. 25, Attach. 1 at 4-5.) Again, the court concurs with BMI.

Under 17 U.S.C. § 504(c)(1), a plaintiff may seek statutory damages in lieu of actual damages. The standard spectrum of permissible damages ranges from $750 to $30,000 per infringement, as the court deems just.

*See id.* However, damages may be as low as $200 per infringement if such infringement was "innocent," and as high as $150,000 dollars per infringement if willful. *See* 17 U.S.C. § 504(c)(2). Willfulness is established through proof that the infringer "had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility." *Twin Peaks Prods., Inc. v. Publ'n Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993). Conversely, a finding of innocence requires proof—from the defendant—that it "'was not aware and had no reason to believe that [its] acts constituted an infringement.'" *D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 35 (2d Cir. 1990) (quoting 17 U.S.C. § 504(c)(2)).

In determining a proper statutory award, courts should consider the following:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). Though no individual factor is paramount, the award should "put infringers 'on notice that it costs less to obey the copyright laws than to violate

them.'" *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (quoting *Rodgers v. Eighty Four Lumber Co.*, 623 F. Supp. 889, 892 (W.D. Pa. 1985)).  To this end, courts often impose statutory damages in an amount more than double the unpaid licensing fees where the infringement was not innocent.  *Id.*

As an initial matter, DFK's claim that it was an "innocent infringer" is belied by the record.  BMI placed seventy-nine telephone calls and sent sixteen letters to Sneaky Pete's regarding the public performance of BMI's music.  (*See* BMI's SMF ¶ 26.)  No matter of how many of the letters it actually received, Karl admits that he spoke with a BMI representative "[o]n at least one occasion."  (*Id.*)  When coupled with the fact that DFK posted a notice warning against playing BMI's music, (*see* DFK's SMF ¶ 59), it is clear that DFK had reason to believe its "acts constituted an infringement." *D.C. Comics Inc.*, 912 F.2d at 35 (internal quotation marks omitted).

Here, BMI's proposed statutory award of $9,000 per infringement, or $45,000 total, represents an amount that is 1.75 times the amount DFK would have paid BMI in licensing fees between December 2007 and

12

September 2010.⁸  (*See* Dkt. No. 24, Attach. 9 at 15-17.)  Undoubtedly, the following factors weigh in favor of such an award: (1) BMI sent at least ten properly addressed letters to DFK, each of which informed DFK of the need to purchase a BMI license; (2) the seventy-nine telephone calls BMI made to DFK regarding the same; and (3) DFK's unwillingness throughout this litigation to disclose its financial records.  (*See* Dkt. No. 25, Attach. 3 ¶ 26, Dkt. No. 25, Attach. 38 ¶¶ 18-19.)  Indeed, because DFK refused to produce the requested income documentation for both DFK Entertainment, LLC and Karl, it is impossible to ascertain "the expenses saved, and profits earned," by DFK's infringement of the Works.  *Bryant*, 603 F.3d at 144.  However, BMI has not proven that DFK infringed its copyrights over the entirety of the three-year period it cites in support of its claim.  (*See* Dkt. No. 24, Attach. 9 at 15.)  Given that BMI's evidence only establishes infringements over a two-year span—namely, the years 2009 and 2010—the $45,000 award must be reduced.  (*See* BMI's SMF ¶ 18.)

In sum, after weighing all of these factors, the court concludes that a statutory award of $4,000 per infringement, or $20,000 total, is appropriate

---

⁸ Because this figure falls within the standard spectrum of awards, a finding, and discussion of, willfulness is unnecessary.  *See* 17 U.S.C. § 504(c)(1).

as it not only remedies the injury sustained by BMI, but also "put[s] infringers[, like DFK,] on notice that it costs less to obey the copyright laws than to violate them." *R Bar*, 919 F. Supp. at 660 (internal quotation marks omitted).

    3.    *Attorneys' Fees and Costs*

As the prevailing party, BMI requests $23,379 in attorneys' fees and $2,216.47 in costs. (*See* Dkt. No. 24, Attach. 6 ¶ 13.) In response, DFK argues that BMI is not entitled to attorneys' fees because it, *inter alia*, attempted to settle the litigation before commencing discovery. (*See* Dkt. No. 25, Attach. 1 at 8-12.) Though appropriate in this case, BMI's requested attorneys' fees are unreasonable.

The Copyright Act provides that the court may award reasonable attorneys' fees to the prevailing party at its discretion. *See* 17 U.S.C. § 505. In making this determination, the court considers the following factors: "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)).

14

As discussed above, DFK repeatedly ignored BMI's letters and phone calls, and in so doing, deprived BMI of at least $16,000 in licensing fees. (S*ee* BMI's SMF ¶¶ 25-28.) Moreover, its settlement offer of $5,000—a factor which DFK asserts shows its willingness to avoid litigation—was objectively unreasonable as it did not even cover the cost of a one-year license from BMI. (*See* Dkt. No. 25, Attach. 38 ¶ 8; Dkt. No. 26 ¶¶ 3-6.) Finally, DFK has offered no viable defense for its infringement of the Works, yet still refused to fully acknowledge responsibility for its conduct. (*See, e.g.*, Dkt. Nos. 17, 18; Dkt. No. 25, Attach. 1 at 4; Dkt. No. 25, Attach. 3 ¶¶ 1-4, 21-26.) As such, an award of attorneys' fees here is both appropriate and necessary "to advance [the] considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19 (internal quotation marks omitted).

Regarding the amount of attorneys' fees to award, courts within the Second Circuit apply the "presumptively reasonable fee analysis" in determining the appropriate remuneration. *Porzig v. Dresdner, Kleinwort, Benson, North Am. LLC*, 497 F.3d 133, 141 (2d Cir. 2007). This analysis "involves determining the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multiplying the two figures

15

together to obtain the presumptively reasonable fee award." *Id*. In determining what is reasonable the following factors are useful:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 114 n.3 (2d Cir. 2007) (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  However, the facts and circumstances of each case are different and the court is not compelled to award the same hourly rates in every case.  In fact, "a district court may use an out-of-district hourly rate—or some rate in between the out-of-district rate sought and the rates charged by local attorneys—in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *Arbor Hill*, 522 F.3d at 191.

In the instant case, BMI's attorney submitted an affidavit which

16

shows that his firm spent 68.5 hours litigating this case, with rates ranging from $130 to $400 per hour.  (*See* Dkt. No. 24, Attach. 6 ¶¶ 5-10; Dkt. No. 24, Attach. 7 at 68-80.)  Specifically, BMI's records show: attorney Perlman, a senior partner in Buffalo, New York, spent 58 hours on this case at an average hourly rate of $375 per hour; attorney Weisz, a senior partner in Albany, New York, spent 1.1 hours on this case at an hourly rate of $325 per hour; attorney Grimmick, a partner in Albany, New York, spent 2.6 hours on this case at an hourly rate of $240 per hour; attorney Coheley, an associate in Buffalo, New York, spent 2.0 hours on this case at an hourly rate of $195 per hour; and 3 hours spent on this case by Leslie Fischer, a legal assistant, at an hourly rate of $130 per hour.[9]  (*See id.*)  Notwithstanding the potential complexities involved in copyright litigation, and the need to have counsel, such as BMI's, who is conversant with the practice area, the court is unpersuaded that the fees requested, namely the hourly rates, are reasonable.

Comparatively, BMI's rates are higher than those accepted by other

---

[9] The court calculated the total number of hours for each individual on the basis of the records provided.  (*See* Dkt. No. 24, Attach. 6 ¶ 5-10; Dkt. No. 24, Attach. 7 at 68-80.)  Though it would have been helpful for BMI to submit totals for each, its failure to do so is of no moment, especially since DFK failed to contest any of the individual fees.  (*See* Dkt. No. 25, Attach. 1 at 8-12.)

courts in the Western and Northern Districts. For example, Judge Foschio, in the Western District of New York, recently stated the following were reasonable rates in that district: $355 per hour for a senior partner, $250 per hour for partners, $180 per hour for associates, and $100 per hour for paralegals. *See Granite Music Corp. v. Ctr. St. Smoke House, Inc.*, 786 F. Supp. 2d 716, 739 (W.D.N.Y. 2011). And in this district, the "prevailing hourly rates," which may be slightly higher now, "are $210 per hour for an experienced attorney, $150 per hour for an attorney with more than four years experience, $120 per hour for an attorney with less than four years experience, and $80 per hour for paralegals." *See, e.g.*, *Lore v. City of Syracuse*, Dkt. Nos. 09-3772-cv(L), 09-4206-cv(XAP), 2012 WL 310839, at *38 (2d Cir. Feb. 2, 2012) (internal quotation marks omitted). Based on these figures, the court concludes that, in this case, the following are reasonable rates: $270 for partners, $165 for associates, and $90 for paralegals.

Thus, after considering the factors discussed above, the parties' arguments regarding the propriety of attorneys' fees, and the reasonableness of the time spent litigating this case, the court awards BMI $17,259 in attorneys' fees and $2,216.47 in costs.

18

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that BMI's motion for summary judgment (Dkt. No. 24) is **GRANTED**; and it is further

**ORDERED** that DFK's cross-motion for partial summary judgment (Dkt. No. 25) is **DENIED**; and it is further

**ORDERED** that the Clerk shall enter judgment in favor of BMI and against defendant DFK Entertainment, LLC and Dominic Karl in the amount of **$39,475.47**, which represents $20,000 in statutory damages, $17,259 in attorneys' fees and $2,216.47 in costs; and it is further

**ORDERED** that Clerk shall close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 15, 2012
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court